MABEL T. RICKERT

*v.*

JOSEPH W. SUDDARD *et al.*

*Opinion filed February 19, 1900.*

1. LOAN ASSOCIATIONS—*completed withdrawal cancels membership.* One whose withdrawal of stock is completed by the surrender of the stock and the receipt of a check for the withdrawal value ceases to be a member, and neither the association nor its receiver has power to re-adjust the settlement and re-instate the member.

2. SAME—*when withdrawing member is entitled to payment of check— insolvency.* The delivery, by a loan association to a withdrawing member, of a check for withdrawal value upon a sufficient fund in the bank, operates to transfer title to the sum named to the payee, who may enforce payment in a court of equity though the funds were withdrawn before presentment by the custodian, who turned them over to the receivers, who alone defend the suit.

3. MASTERS IN CHANCERY—*court should determine master's compensation for examining questions.* The clerk may tax specific fees allowed to the master by statute for taking testimony, but he has no power to determine the master's compensation for examining questions and reporting conclusions, that being the province of the court in the exercise of judicial discretion.

*Rickert* v. *Suddard*, 80 Ill. App. 204, reversed and remanded.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. ELBRIDGE HANECY, Judge, presiding.

NORMAN H. CAMP, for appellant.

PAM, DONNELLY & GLENNON, for appellees.

Mr. CHIEF JUSTICE CARTWRIGHT delivered the opinion of the court:

Appellant was a stockholder in the Mechanics' and Traders' Savings, Loan and Building Association, holding five shares in the forty-sixth series, issued January 18, 1887, and five shares in the sixty-fourth series, issued July 6, 1891.  In October, 1896, she gave notice for with-

drawal of the stock in the sixty-fourth series, and on February 15, 1897, the board of directors declared the stock of the forty-sixth series matured. In pursuance of her notice and the declaration of maturity by the board, she assigned and delivered all of her said stock to the association on June 22, 1897. There was due her for the five shares of stock which had been declared matured, $500, and $217.70 was the withdrawal value of her five shares in the sixty-fourth series. The association canceled her stock and gave her its check for $717.70,—the amount due her,—on the American Exchange National Bank of Chicago, where it had on deposit over $4000. The check was not presented to the bank for payment, and on July 31, 1897, the State Auditor appointed a custodian for the association, who took possession of its assets and withdrew the money from the bank. On August 7, 1897, the check was presented to the bank, but payment was refused for want of funds and the check was protested. The other holders of stock in the forty-sixth series had been paid in full the face value of their stock. On August 13, 1897, a bill was filed by the People, on the relation of said State Auditor, in the circuit court of Cook county, against the association, and appellees were appointed receivers and got the money from the custodian.

A bill had been filed on July 27, 1897, by stockholders of the association, alleging mismanagement on the part of its officers and praying for an accounting and relief, and this bill was afterwards consolidated with the bill of the People. Appellant, by leave of court and upon notice to all parties in the suit, filed an intervening petition on August 30, 1897, claiming said amount of $717.70 by virtue of the check given her. All the parties to the suit except the receivers were defaulted, and the receivers answered, admitting that the association had on deposit in the bank a sum of money in excess of the amount of the check and that the custodian withdrew

the money and turned it over to them, and they alleged
that the check was given for the withdrawal value of
stock; that at the time of the transactions the associa-
tion was insolvent, and that petitioner was still a share-
holder and only entitled to a *pro rata* share on a final
distribution. The court overruled the objections of peti-
tioner to that part of the answer concerning insolvency.
The cause was referred to a master in chancery to take
evidence and report the same with his conclusions. The
master took the evidence and prepared a report, where-
upon the petitioner asked for an order requiring him to
present the report in court for the purpose of having
the court fix his fees. The motion was supported by an
affidavit that the evidence in the case covered fifty-
five type-written pages; that the entire time occupied in
taking testimony did not exceed five hours; that the mas-
ter was not present at any time during the taking of tes-
timony, and that the argument before the master on the
case and on objections to his report did not exceed four
hours, but that the master demanded $175 for his fees
and refused to file his report until the fees were paid.
The court denied the motion, and it was finally arranged
that the receivers should pay the $175 demanded and de-
duct it from what might be due petitioner. The report
was then filed, finding that the association was insolvent
as alleged in the answer and that petitioner was still
a stockholder; that the check was not an assignment of
the funds in the bank to the amount of the check, and
that the prayer of the petitioner should be denied. The
court overruled objections and entered a final decree
July 12, 1898, which recited that the court refused to fix
the fees of the master until the clerk of the court had
passed upon such fees, and the petition was dismissed.

The check of a depositor upon a bank where he has
money sufficient to meet it, transfers to the payee, as be-
tween him and the depositor, the title of so much of the
deposit as the check calls for, to lie in the bank until

demanded by the presentation of the check. As to the bank, there is no privity until presentment; but as between the parties, the delivery of the check is the appropriation of the money, and by the act of presentment the checkholder and bank are brought into privity, and an action at law may be maintained against the bank for the money. (*Munn* v. *Burch,* 25 Ill. 21; *Union Nat. Bank* v. *Oceana County Bank,* 80 id. 212; *Niblack* v. *Park Nat. Bank* 169 id. 517; *Gage Hotel Co.* v. *Union Nat. Bank,* 171 id. 531.) The check in this case was given upon a fund then in the bank, and which remained there until it was seized by the State, acting through the Auditor. As between the parties that check operated to transfer the title of the sum named in it to the petitioner. The association never repudiated or attempted to repudiate the settlement, nor withdrew or attempted to withdraw the money from the bank. The account of petitioner with the association was balanced and her stock canceled when the check was given. Nothing was left to be done by either of the parties to complete the transaction, and it was in no sense executory. Her rights thereafter were upon the check, which was received as payment. Under such circumstances, where the withdrawal of a stockholder is completed it puts an end to membership in the association. (4 Am. & Eng. Ency. of Law,—2d ed.—1052.) The value of the stock was determined by the association, and, so far as the parties were concerned, it had a right to give and the petitioner had a right to receive the check in payment. The other stockholders in the forty-sixth series were paid in full, and petitioner was compelled to come into a court of equity because the State had taken the assets of the association and they were being administered in that court. The association could not object, and had no authority to compel re-payment or make petitioner a stockholder again, and it never attempted to do so. When the petition was filed the stockholders and other parties to the case were defaulted and

made no defense against petitioner's claim. The receivers alone defended, and they had succeeded only to the rights which belonged to the association. They had no right to re-adjust the settlement, nor could the court do so in the enforcement of any right which they represented. (*Young* v. *Stevenson*, 180 Ill. 608.) Equity follows the law, respects legal rights, regards and enforces priorities, and the fact that petitioner had to come into a court of equity because the State had taken the fund appropriated by the check for her payment should not deprive her of her right.

The statute fixing fees and salaries allows to masters in chancery in Cook county for taking and reporting testimony under order of court, for every one hundred words fifteen cents, and in addition, for examining questions in issue and reporting conclusions thereon such compensation as the court may deem just. No officer can recover fees or costs except such as are fixed and allowed by the statute. (*Smith* v. *McLaughlin*, 77 Ill. 596.) The statute allows a fixed amount for taking and reporting testimony, and the clerk may tax specific fees which are so fixed, but he can tax no other, except as allowed and ordered by the court. The determination of what is just compensation for examining questions and reporting conclusions is the exercise of judicial power, with which the clerk is not invested. It involves judicial discretion and judgment, and the clerk has no right to tax a fee of that kind until it has been allowed by the court. The court erred in denying the motion of petitioner and refusing to fix the amount of the master's fee for examining the questions in issue and reporting his conclusions, and erred in compelling petitioner to pay the money demanded or to have it advanced out of moneys due her.

The judgment of the Appellate Court and the order of the circuit court are reversed and the cause is remanded to the circuit court, with directions to order the receivers to pay petitioner $717.70, with interest at five per cent

from August 7, 1897, when the check was presented, without any deduction for moneys advanced by said receivers to the master for her under the order of the circuit court, and to require said receivers to pay the petitioner's costs in due course of administration.

*Reversed and remanded.*